UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA LEE, *et al.*,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>ANTONY J. BLINKEN, in his official capacity as Secretary of the U.S. Department of State,<br><br>      *Defendants.* | No. 23-cv-1783 (DLF) |

**MEMORANDUM OPINION**

Sara Movassaghi is an Iranian national seeking to enter the United States to marry her American fiancé Joshua Lee. To that end, Movassaghi has applied for a nonimmigrant K-1 visa. Lee and Movassaghi brought this action under the Administrative Procedure Act, 5 U.S.C. §§ 706(1), (2)(A), and Mandamus Act, 28 U.S.C. § 1361, to compel a final decision on Movassaghi's visa application. Pet. at 33, Dkt. 1. Before the Court is the defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss at 1, Dkt. 6. For the reasons that follow, the Court will grant the motion and dismiss the Petition under Rule 12(b)(6).

**I.   BACKGROUND**

    **A.   Statutory and Regulatory Background**

A noncitizen who "is the fiancée . . . of a citizen of the United States . . . and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission" may apply for a "K-1" nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(K)(i). The process to obtain a K-1 visa, however, is "multistep." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87,

90 (D.D.C. 2020). First, the noncitizen's American fiancé(e) must submit a petition, known as a Form I-129F, to the Department of Homeland Security (DHS). *See* 8 U.S.C. § 1184(d)(1); *I-129F, Petition for Alien Fiancé(e)*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-129f [https://perma.cc/S2TD-D7TY]. Second, after DHS approves the petition, it is forwarded to the National Visa Center (NVC). *See Visas for Fiancé(e)s of U.S. Citizens*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/family/family-of-us-citizens/visas-for-fiancees-of-us-citizens [https://perma.cc/M3FT-ZLQU]. Finally, the NVC forwards the visa application to a U.S. Embassy or consulate where the noncitizen fiancé(e) intends to apply for a K-1 visa. *Id.* A consular officer is then responsible for interviewing the noncitizen fiancée, reviewing the application, determining the couple's "bona fide intent to establish a life together," and requesting any appropriate background check. *Id.*

After a noncitizen has "properly completed and executed" a "visa application" and interviewed, a "consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order . . . discontinue granting the visa." 22 C.F.R. § 41.121. "No visa or other documentation shall be issued" if (1) "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law"; (2) "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder"; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g). In 2002, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002, which, among other things, provided that "[n]o nonimmigrant visa under [8 U.S.C. § 1101(a)(15),]" including K-category visas, "shall be issued to any alien from a country that is a state sponsor of international terrorism unless the Secretary of State determines, in consultation

with the Attorney General and the heads of other appropriate . . . agencies, that such alien does not pose a threat to the safety or national security of the United States." Pub. L. No. 107-173, § 306, 116 Stat. 543, 555 (2002) (codified at 8 U.S.C. § 1735). As of January 19, 1984, the Secretary of State has designated Iran a "state sponsor of international terrorism." *State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism [https://perma.cc/Z5MQ-LWR3].

B.  **Factual Background**[1]

Sara Movassaghi is an Iranian citizen. Pet. ¶ 80, Dkt. 1. In January 2021, she met on the internet Joshua Lee, a U.S. citizen working as an "All Source Analyst and Access Control Officer in the US Army Reserve in Arlington, Virginia." *Id.* ¶¶ 79, 81. Movassaghi and Lee began dating in April 2021, and a year later, on April 15, 2022, "they got engaged" during a trip to Istanbul, Turkey. *Id.* ¶¶ 81, 82. They planned for Movassaghi to move to the United States, and to that end, Lee filed a Petition for Alien Fiancée (Form I-129F), which was approved on January 10, 2023. *Id.* ¶¶ 83, 85, 87; *see id.* ex. A, Dkt. 1-1. On February 23, 2023, Movassaghi submitted a K-1 visa application, and on May 8, 2023, she interviewed with a consular official at the U.S. Embassy in Ankara, Turkey. *See id.* ex. B, Dkt. 1-2; *id.* ¶¶ 89, 90. After the interview, she was informed that "her application would have to undergo mandatory administrative processing," and she received "a temporary refusal letter" "under section 221(g) of the U.S. Immigration and Nationality Act."

---

[1] When deciding a Rule 12(b)(6) motion, the Court may consider only the petition itself, documents attached to the petition, documents incorporated by reference in the petition, and judicially noticeable materials. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). At this motion-to-dismiss stage, the court may take judicial notice of publicly available information on official government websites. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of an official government website).

*Id.* ¶ 92; *id.* ex. D, Dkt. 1-4.  Since then, Movassaghi has "inquired . . . multiple times" about the status of her application, but she is still "waiting for a final decision to be made."  *Id.* ¶¶ 95–97.

Approximately 4 months after Movassaghi submitted her application, she and Lee sued Secretary of State Antony Blinken, Assistant Secretary for Consular Affairs Rena Bitter, and Consul General of the U.S. Embassy in Ankara Jayne Howell ("Defendants").  *Id.* ¶¶ 29–31.  In Counts 1 and 4, the plaintiffs contend that the adjudication of Movassaghi's pending visa application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and Mandamus Act, 28 U.S.C. § 1361.  *See* Pet. ¶¶ 124–185.  Count 2 alleges that the defendants arbitrarily and capriciously "withheld agency action in contravention of statutes, regulations, and stated policy pronouncement" in violation of the APA, 5 U.S.C. § 706(2).  *See* Pet. ¶¶ 143–158.  And Count 3 claims the defendants unlawfully withheld a "mandatory entitlement" in violation of the APA, 5 U.S.C. § 706(1).  *Id.* ¶¶ 159–170.

As relief, the plaintiffs request, among other things, a writ of mandamus and order compelling the defendants to "adjudicate [Movassaghi's] K-1 visa application" within 30 days. *Id.* at 33.  On August 21, 2023, the defendants moved to dismiss.

## II.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal law empowers federal district court judges to hear only certain kinds of cases, and the plaintiffs bear the burden of establishing that their case falls within that limited jurisdiction.  *Id.*  When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiffs the benefit of

all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

### III.   ANALYSIS

#### A.   Redressability

The Court is unpersuaded by the defendants' contention that Secretary Blinken "cannot adjudicate an application for a visa," so he cannot redress the plaintiffs' alleged injuries. Mot. to

5

Dismiss at 4, Dkt. 6. "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996). The Court previously rejected the same argument in *Ahmadi v. Scharpf*, and it adopts the same reasoning here: namely, the INA's proscription against the Secretary of State directing the outcome of a particular visa adjudication does not extend to his "directing [consular officers] to decide pending applications within a reasonable time." No. 23-cv-953, 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024) (quoting *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023)); *see Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10–11 (D.D.C. 2022). Further, for the first time in their reply brief, the defendants suggest Assistant Secretary Bitter also cannot redress the plaintiffs' alleged injuries. *See* Reply at 1–2, Dkt. 9. But it is a "basic precept that arguments generally are forfeited if raised for the first time in reply." *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 615 (D.C. Cir. 2019). Even assuming it's not forfeited, the argument fails for the same reason the arguments as to the Secretary fail.

      **B.**    **Doctrine of Consular Nonreviewability**

The Court also rejects the defendants' argument that the doctrine of consular nonreviewability bars the plaintiffs' suit. *See* Mot. to Dismiss at 11–15. The Court notes that the facts in this case are similar to those in *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523 (D.D.C. Feb. 7, 2024), and *Ahmadi v. Scharpf*, 2024 WL 551542, in which Iranian nationals brought unreasonable-delay claims as to their F- and J-type visa applications. In those cases, the Court rejected the same arguments that the defendants repeat here. Seeing no reason to diverge from those rulings, the Court again rejects the defendants' arguments.

First, under the prevailing view, the doctrine of consular reviewability has no application here. "[T]he consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11. Here, the Petition plainly alleges that Movassaghi received "a temporary refusal letter," and her visa application remains in "administrative processing" without a final decision. Pet. ¶¶ 92, 97. At the motion-to-dismiss stage, the Court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Although the defendants emphasize that Movassaghi's application has been "refused," as the Court previously noted, *see Pourabdollah*, 2024 WL 474523, at *4–5; *Ahmadi*, 2024 WL 551542, at *4, and as the plaintiffs note too, *see* Opp'n at 14–19, Dkt. 8, "[w]hile a visa application must be either granted or refused at an initial interview, that refusal is often not final. Instead, a refusal may be entered for 'administrative processing,' and applicants may have an opportunity to provide additional information to establish eligibility." *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D.D.C. 2022).

Second, as previously noted, the Court does not share the defendants' view that the D.C. Circuit's decision in *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021), expanded the doctrine of consular nonreviewability to administrative-processing claims like Movassaghi's. *See Pourabdollah*, 2024 WL 474523, at *5; *Ahmadi*, 2024 WL 551542, at *4 n.5. Joining "[o]ther judges in this district," the Court noted that "*Baan Rao*'s use of the word 'withhold'" did not sweep "in consular decisions to delay final adjudication on a visa application" and it occurred in the context of "a challenge to final visa denials and not to processing delays." *Pourabdollah*, 2024 WL 474523, at *5 (cleaned up). The Court incorporates that discussion here. The doctrine of consular nonreviewability thus does not bar this suit.

### C.     Unreasonable-Delay Claims

Although the Court rejects the defendants' threshold arguments, it ultimately agrees with them that the plaintiffs' APA and mandamus claims for unreasonable delay fail to state a claim.

Courts review claims of unreasonable delay in processing immigration petitions according to "the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017).  Under 5 U.S.C. § 706(1), a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  From this text emerges two requirements for an unreasonable-delay claim.  First, a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Second, the Court must evaluate "whether the agency's delay is so egregious as to warrant mandamus."  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up).

The Court will assume without deciding that the plaintiffs allege the defendants are subject to a discrete, required duty because, in any event,[2] they have not suffered an unreasonable delay "so egregious as to warrant mandamus."  *Id.*

Contrary to the plaintiffs' assertions, *see* Opp'n at 22–24, it is not premature to adjudicate their unreasonable-delay claim at the motion-to-dismiss stage.  Courts in this district have routinely

---

[2] As the Court previously held, a delay in deciding whether to "[g]rant[] or refus[e] a visa to a[] [specific] applicant" "is clearly a discrete agency action" rather than a "broad programmatic attack."  *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *6 n.5 (D.D.C. Feb. 7, 2024) (quoting *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023)).  Further, the Court is bound to follow the D.C. Circuit's holding that the APA "imposes a general but *nondiscretionary* duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'"  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–1100 (D.C. Cir. 2003) (emphasis added); *see Pourabdollah*, 2024 WL 474523, at *6 n.5; *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *4 n.7 (D.D.C. Feb. 12, 2024).

decided whether an agency's delay is unreasonable when processing claims at the motion-to-dismiss stage. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (collecting cases), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021); *Khan v. Blome*, No. 22-cv-2422, 2022 WL 17262219, at *4 (D.D.C. Nov. 29, 2022). Indeed, as one judge in this district has observed, "the weight of authority appears to cut" in favor of deciding "unreasonable-delay claims at the motion-to-dismiss stage before discovery." *Palakuru*, 521 F. Supp. 3d at 50. So long as a "record contains enough facts to evaluate the *TRAC* factors" at the motion-to-dismiss stage, "then a Court may appropriately decide to do just that." *DaCosta v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)). This record—including the plaintiffs' 33-page complaint and 7 attachments to the complaint—satisfies that standard. In addition, the plaintiffs fail to point to any particular deficiencies in the record precluding an evaluation of the *TRAC* factors at the pleading stage.

To evaluate whether an agency's delay is unreasonable, the D.C. Circuit prescribed a six-factor test in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal quotation marks omitted) (quoting *TRAC*, 750 F.2d at 80).  The *TRAC* factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'"  *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).

Here, the plaintiffs do not advance any arguments under the *TRAC* framework, *see* Reply at 5–6, Dkt. 9, and "the Court may treat those arguments as conceded," *Dawn J. Bennett Holding, LLC v. Fedex Techconnect, Inc.*, 217 F. Supp. 3d 79, 82 (D.D.C. 2016).  *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded.").  Despite this apparent abandonment, the Court will, consistent with Rule 12(b)(6), "construe the allegations and facts in the [Petition] in the light most favorable to the plaintiffs" and "grant the plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Stevens v. Inphonic, Inc.*, 662 F. Supp. 2d 105, 115 (D.D.C. 2009) (cleaned up).  Even accepting the Petition's allegations as true and liberally construed, they are insufficient to state a claim for unreasonable delay under the *TRAC* framework.

1. *TRAC Factors 1 and 2*

The first two factors are often considered together, *see, e.g.*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), *appeal dismissed*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021), and the first *TRAC* factor is often considered "the most important" of the six.  *In re Core Commc'ns, Inc.*, 531 F.3d at 855.  In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed

by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Factors one and two favor the defendants. "There is no congressional imposed timeline for processing K-1 visa applications." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 165 (D.D.C. 2021). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine the reasonableness of a visa-application delay. *Sarlak*, 2020 WL 3082018, at *6. "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up). When the Petition was filed in this Court, Movassaghi had waited approximately 4 months (now 12 months). This delay is reasonable under the circumstances and by comparison to similar K-1 visa cases. *See, e.g.*, *Mohammad*, 548 F. Supp. 3d at 166 (holding that a 9-month delay in adjudication of a K-1 visa was not unreasonable); *Penn v. Blinken*, No. 21-cv-1055, 2022 WL 910525, at *6 (D.D.C. Mar. 29, 2022) (holding that a 22-month delay in the adjudication of K-1 visas during the COVID-19 pandemic was not unreasonable); *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) (holding that a 9-month delay in the adjudication of a K-1 visa was not unreasonable); *Brzezinski v. DHS*, No. 21-cv-376, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021) (holding that a 17-month delay in the adjudication of a K-1 visa was not unreasonable). Even if the plaintiffs were not informed of the enhanced background requirements that apply to Iranian national visa applicants, *see* Opp'n at 3, the reasonableness of the delay is further justified by the applicability of 8 U.S.C. § 1735(a), which requires the Secretary of State to make a finding that Movassaghi, an Iranian national, "does not pose a threat to . . . safety or national security" before issuing a visa.

The plaintiffs' arguments to the contrary are unavailing.  First, they point to the District of Columbia Appropriations Act, which provides that "[i]t shall be the policy of the Department of State to process . . . nonimmigrant K-1 visa applications of fiances of United States citizens within 30 days of the receipt of all necessary documents from the application and the Immigration and Naturalization Service."  Pub. L. No. 106-113, § 237(a), 113 Stat. 1501, 1501A-430 (1999); *see* Pet. ¶¶ 11, 52, 118, 132, 150, 176.  Pursuant to this provision, the State Department's *Foreign Affairs Manual* provides, "[t]he Department expects all visa sections to strive to meet the 30-day requirement" after "receipt of the necessary information from the application and the Department of Homeland Security."  9 FAM § 502.7-3(C)(2).  In enacting this provision, however, Congress "did not *mandate* a statutory deadline for K-1 visa adjudications" and instead instructed that 30 days "shall be the *policy*" of the State Department.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (emphasis added).  Further, the *Foreign Affairs Manual*'s use of the word "strive" indicates that the 30-day "requirement" is in fact aspirational, not mandatory.

Second, the plaintiffs argue that 8 U.S.C. § 1571 demonstrates that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  Pet. ¶ 136 (citing 8 U.S.C. § 1571(b)).  As in *Ahmadi*, 2024 WL 551542, at *5 n.9, the Court remains unpersuaded.  By its plain text, § 1571 applies to Immigration and Naturalization Service, not the State Department, and it governs "immigration benefit application[s]," not the *non*immigrant visa application at issue here.  *See Murway*, 2022 WL 493082, at *2 n.2.  Also, read contextually, § 1571(b) "is aspirational, rather than mandatory," further undermining any suggestion of a "Congressional timeline to apply."  *Shen v. Pompeo*, No. 20-cv-1263, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021).

12

Even if the District of Columbia Appropriations Act and § 1571(b) "add some weight in a plaintiff's favor for the second *TRAC* factor," that additional weight does not overwhelm the other circumstances weighing in favor of the defendants under the first two *TRAC* factors. *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022).

 2. *TRAC Factor 4*

Many courts find the fourth *TRAC* factor to "carr[y] the greatest weight." *DaCosta*, 643 F. Supp. 3d at 15 (citing *Milligan*, 502 F. Supp. 3d at 319), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023). In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). The fourth factor considers the effect of prioritizing one agency action over others. *See TRAC*, 750 F.2d at 80. Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991).

This factor also weighs in favor of the defendants. The plaintiffs do not present any argument, either in their Petition or opposition, as to why their requested relief would not amount to a "judicial reordering[] of agency priorities." *Rahman*, 2023 WL 196428, at *4 (cleaned up). Consular "processing capacity is presently a zero-sum game," so granting them relief "would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Murway*, 2022 WL 493082, at *4. Admittedly, the effect of prioritizing one visa application may prove minimal, but "the accumulation of such individual cases being

13

pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150.  Any such reordering of "the queue of applicants seeking adjudication" would be "inappropriate" here because there would be no demonstrable "net gain" in visa processing at large*. Id.* at 149.

### 3. *TRAC Factors 3 and 5*

*TRAC* factors three and five concern the "health and welfare . . . at stake" and "the interests prejudiced by delay." *TRAC*, 750 F.2d at 80.  These factors, often considered in tandem, *see, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020), slightly favor the plaintiffs.  The plaintiffs allege that due to the delay they have "missed memories, milestones, and the simple shared joys of daily family life that they cannot regain or recreate." Pet. ¶ 182.  These allegations, standing alone, do not suggest the plaintiffs are in a worse position than a visa applicant who merely claims that his life has been put "on hold" by the visa delay. *Palakuru*, 521 F. Supp. 3d at 53.  Further, the plaintiffs express concern that Movassaghi may be targeted in Iran for her Atheist beliefs, but this allegation, as pleaded, is speculative.  *See* Pet. ¶ 104.  The plaintiffs also allege that the delay "is causing severe emotional distress and psychological harm to the couple," and Movassaghi is unable to help Lee from afar with his post-traumatic stress disorder.  *Id.* ¶¶ 105, 108.  The Court must take these alleged adverse effects as true at this stage, *see Iqbal*, 556 U.S. at 679, and concludes that the visa delay has affected the plaintiffs' health and welfare.

### 4. *TRAC Factor 6*

The final *TRAC* factor requires the Court to "determine whether the agency has acted in bad faith in delaying action." *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023).  This factor favors neither party.  The plaintiffs allege no facts

suggesting bad faith.  "[T]he lack of plausible allegations of impropriety does not weigh against [the plaintiffs], and therefore does not alter the Court's analysis." *Id.*

Taken together, the *TRAC* factors heavily favor the defendants.  The Court thus concludes that the plaintiffs have failed to state a claim for unreasonable delay under the APA and are not entitled to mandamus relief.  The Court will thus dismiss Counts 1 and 4 of the Petition.

### D.     Remaining APA Claims

The Court will also dismiss the remaining counts in the Petition for failure to state a claim. First, the plaintiffs fail to state a claim under 5 U.S.C. § 706(2)(A).  *See* Pet. ¶¶ 143–158.  On the Court's reading of the Petition, the plaintiffs' § 706(2)(A) claim is based on the defendants "unlawfully with[olding] agency action" in an "arbitrary [and] capricious" manner because Movassaghi has not received a final decision on her visa.  *Id.* ¶¶ 145, 148.  But, by the APA's plain text, a claim for "agency action unlawfully withheld or unreasonably delayed" arises under § 706(1), not § 706(2)(A).  And the plaintiffs fail to state a claim under § 706(1) for the reasons discussed in Section III.C, *supra*.  Even assuming the plaintiffs intended to plead a § 706(2)(A) claim, "[w]hen review is sought 'under [a] general review provision[] of the APA,' like section 706(2)(A), 'the agency action in question must be final agency action.'" *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)).  Here, however, the plaintiffs concede that they "have yet to receive a final adjudication of their visa application," Pet. ¶ 3, and they rely heavily on the fact "there has been no final decision" in their opposition brief, Opp'n at 14.  As such, they fail to allege a crucial element under § 706(2)(A), dooming their claim.

Second, the plaintiffs fail to state a distinct "withholding" claim under 5 U.S.C. § 706(1). *See* Pet. ¶¶ 159–170.  The plaintiffs contend the defendants "owe [them] a nondiscretionary,

ministerial duty to act upon the visa application," and the defendants are thus "unlawfully withholding discrete action they are required to take within the temporal limits imposed by statute and the express intent of Congress." *Id.* ¶¶ 168, 170.  As pleaded, the plaintiffs' "unlawfully withheld" claim sounds in "unreasonabl[e] delay[]," and the plaintiffs fail, in any respect, to "distinguish[] between visa adjudications being 'unlawfully withheld' as opposed to 'unreasonably delayed' under § 706(1)." *Tate*, 513 F. Supp. 3d at 147 n.6.  The Court's analysis in Section III.C "of plaintiffs' claim that agency action was unlawfully delayed therefore addresses the entirety of plaintiffs' § 706(1) claims to compel agency action." *Id.*

Given that the plaintiffs' claims fail, the Court will deny their request for attorneys' fees and costs under the Equal Access to Justice Act.  *See* Pet. at 33; 28 U.S.C. § 2412 (only a "prevailing party" may receive fees and expenses).

## CONCLUSION

For the foregoing reasons, the Court will grant the defendants' Motion to Dismiss, Dkt. 6.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

February 15, 2024